**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EMMETT W. CALDWELL, DANIEL RICE, MICHAEL LEONARD, JAMES BRUNO, on behalf of themselves and others similarly situated, | : : : : |
| | : Case No.: 1:20-cv-1090-VSB |
| Plaintiffs, | : : |
| v. | : : |
| THE ROMAN CATHOLIC ARCHDIOCESE OF NEW YORK, THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, and THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, | : : : : |
| Defendants. | : : : |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**PROSKAUER ROSE LLP**

Bettina B. Plevan
Margaret A. Dale
Edna D. Guerrasio
Eleven Times Square
New York, New York  10036
Tel. No.:  (212) 969-3000
bplevan@proskauer.com
mdale@proskauer.com
eguerrasio@proskauer.com
*Attorneys for Defendant*
  *the Archdiocese of New York*

**KELLEY DRYE & WARREN LLP**

John M. Callagy
Michael C. Lynch
Randall L. Morrison, Jr.
101 Park Avenue
New York, New York  10178
Tel. No.:  (212) 808-7544
jcallagy@kelleydrye.com
mlynch@kelleydrye.com
rmorrison@kelleydrye.com
*Attorneys for Defendant*
*the Brooklyn Diocese*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ......................................................................................1

FACTUAL ALLEGATIONS ........................................................................................3

ARGUMENT ..............................................................................................................5

I.     PLAINTIFFS FAILED TO ADEQUATELY PLEAD FRAUDULENT
     INDUCEMENT ...................................................................................................5

       A.    Alleged Statements Were Irrefutably True Or Statements Of Opinion ...............6

       B.    Plaintiffs Cannot Establish Reasonable Reliance Given CVA's Public
            Legislative History and Extensive Media Coverage ................................9

II.    PLAINTIFFS CANNOT MEET THE PLEADING REQUIREMENT FOR
     THEIR NEGLIGENT MISREPRESENTATION CLAIM ......................................10

       A.    Plaintiffs And Defendants Did Not Share A "Special Relationship" ...................10

       B.    Defendants' Alleged Omissions Are Insufficient To Establish Negligent
            Misrepresentation Because Defendants Did Not Owe Plaintiffs A
            Fiduciary Duty ....................................................................................12

III.   PLAINTIFFS FAIL TO SATISFY HEIGHTENED FRAUD PLEADING
     STANDARD ......................................................................................................14

       A.    Plaintiffs Fail to Plead Fraud with Particularity ...........................................14

       B.    Amending the Complaint Would Be Futile ...................................................19

IV.   UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED IN LIGHT OF
     PARTIES' CONTRACTUAL AGREEMENT ......................................................19

CONCLUSION ..........................................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*,
   731 F.2d 112 (2d Cir. 1984)...................................................................................................13

*Am. Med.l Distribs. v. Macdonald Tuskey*,
   No. 16 Civ. 6016 (VSB), 2018 WL 1478301 (S.D.N.Y. Mar., 23 2018) ..............................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................................................5

*Bais Yaakov of Spring Valley v. Alloy, Inc.*,
   936 F. Supp. 2d 272 (S.D.N.Y. 2013)...................................................................................4

*Bank v. Pitt*,
   928 F.2d 1108 (11th Cir. 1991) .............................................................................................19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................................5

*Bouchard v. New York Archdiocese*,
   No. 04 Civ. 9978 (CSH), 2006 WL 1375232 (S.D.N.Y. May 18, 2006) ..............................12

*Burton v. Label, LLC*,
   344 F. Supp. 3d 680 (S.D.N.Y. 2018) (VSB) ................................................................ passim

*Casey v. Odwalla, Inc.*,
   338 F. Supp. 3d 284 (S.D.N.Y. 2018)...................................................................................4

*Deutsch v. JPMorgan Chase & Co.*,
   No. 18 Civ. 11655 (VSB), 2019 WL 4805689 (S.D.N.Y. Sept. 30, 2019) ...........................15

*Dexia SA/NV v. Deutsche Bank AG*,
   Nos. 11 Civ. 5672 (JSR), 11 Civ. 6141 (JSR), 2013 WL 98063 (S.D.N.Y. Jan.
   4, 2013) ...................................................................................................................................14

*EMA Fin., LLC v. Joey New York, Inc.*,
   No. 17 Civ. 9706 (VSB), 2019 WL 4600863 (S.D.N.Y. Sept. 22, 2019).........................15, 16

*Foxley v. Sotheby's, Inc.*,
   893 F. Supp. 1224 (S.D.N.Y. 1995)..................................................................................9, 13

*Gen. Motors Corp. v. Villa Marin Chevrolet, Inc.*,
   No. 98 Civ. 5206 (JG), 2000 WL 271965 (E.D.N.Y. Mar. 7, 2000) ........................................9

*Green v. Covidien LP*,
    No. 18 Civ. 2939 (PGG), 2019 WL 4142480 (S.D.N.Y. Aug. 30, 2019)...............................15

*Gupta v. Headstrong, Inc.*,
    No. 17 Civ. 5286 (RA), 2019 WL 4256396 (S.D.N.Y. Sept. 9, 2019)...................................20

*Hallingby v. Hallingby*,
    693 F. Supp. 2d 360 (S.D.N.Y. 2010).....................................................................................21

*Hofelich v. Ercole*,
    No. 07 Civ. 8059 (PKC) (DFE), 2008 WL 2796636 (S.D.N.Y. July 17, 2008).......................3

*Hyo Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.*,
    665 F. Supp. 2d 239 (S.D.N.Y. 2009)....................................................................................19

*IKB Int'l S.A. v. Bank of Am.*,
    No. 12 Civ. 4036 (LAK), 2014 WL 1377801 (S.D.N.Y. Mar. 31, 2014)................................7

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
    26 F. Supp. 3d 278 (S.D.N.Y. 2014).........................................................................................8

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
    423 F. Supp. 2d 364 (S.D.N.Y. 2006).......................................................................................7

*In re Oil Spill by the Oil Rig Deepwater Horizon*,
    No. MDL 2179, 2017 WL 4764365 (E.D. La Oct. 20, 2017)..................................................20

*In re Worldcom, Inc.*,
    296 B.R. 115 (S.D.N.Y. 2003)................................................................................................20

*LGB Inc. v. Gitano Grp., Inc.*,
    769 F. Supp. 1243 (S.D.N.Y. 1991)........................................................................................11

*Marciano v. DCH Auto Grp.*,
    14 F. Supp. 3d 322 (S.D.N.Y. 2014).........................................................................................7

*MEI Int'l, Inc. v. Schenkers Int'l Forwarders, Inc.*,
    807 F. Supp. 979 (S.D.N.Y. 1992)..........................................................................................11

*Miller v. Int'l Paper Co.*,
    No. 12 Civ. 7071 (LAK) (JLC), 2013 WL 3833038 (S.D.N.Y. July 24, 2013) .....................14

*Moore v. Thomson Reuters (GRC) Inc.*,
    No. 17 Civ. 0211 (LGS), 2017 WL 4083582 (S.D.N.Y. Sept. 13, 2017).........................15, 18

*Naughright v. Weiss*,
    826 F. Supp. 2d 676 (S.D.N.Y. 2011).....................................................................................11

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)..............................................................................8

*NRW, Inc. v. Bindra*,
   No. 12 Civ. 8555 (RJS), 2015 WL 3763852 (S.D.N.Y. June 16, 2015)................................20

*O'Keefe v. Ogilvy & Mather Worldwide, Inc.*,
   No. 06 Civ. 6278 (SHS), 2006 WL 3771013 (S.D.N.Y. Dec. 18, 2006)................................4

*Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*,
   __ F. Supp. 3d __, No. 18 Civ. 8152 (JFK), 2019 WL 5595042
   (S.D.N.Y. Oct. 30, 2019) ..............................................................................14

*Riker, Danzig, Scherer, Hyland & Perretti, LLP v. Premier Capital, LLC*,
   No. 15 Civ. 8293, 2016 WL 5334980 (S.D.N.Y. Sept. 21, 2016)........................................15

*Robinson v. Pierce*,
   No. 11 Civ. 5516 (GBD) (AJP), 2012 WL 833221 (S.D.N.Y. Mar. 13, 2012)......................20

*Sofi Classics S.A. de C.V. v. Hurowitz*,
   444 F. Supp. 2d 231 (S.D.N.Y. 2006)..................................................................20

*Steamfitters Local 449 Pension Plan v. Skechers U.S.A., Inc.*,
   412 F. Supp. 3d 353 (S.D.N.Y. 2019)..................................................................14

*Suez Equity Inv's., L.P. v. Toronto-Dominion Bank*,
   250 F.3d 87 (2d Cir. 2001)..............................................................................11

*Union Carbide Corp. v. Montell N.V.*,
   9 F. Supp. 2d 405 (S.D.N.Y. 1998)....................................................................6

*Villa Martin Chevrolet, Inc. v. Gen. Motors Corp.*,
   No. 98 Civ. 6167 (JG), 1999 WL 1052494 (E.D.N.Y. Nov. 18, 1999)..................................9

**STATE CASES**

*Connaughton v. Chipotle Mexican Grill, Inc.*,
   135 A.D.3d 535 (1st Dep't 2016) ....................................................................6, 9

*Gregor v. Rossi*,
   120 A.D.3d 447, 992 N.Y.S.2d 17 (1st Dep't 2014) ..............................................11

*Jordache Enters., Inc. v. Gettinger Associates*,
   575 N.Y.S.2d 58 (1st Dep't 1991) ................................................................9, 10

*Sirohi v. Lee*,
   222 A.D.2d 222, 634 N.Y.S.2d 119 (1st Dep't 1995) ............................................6

*State v. Barclays Bank of New York, N.A.*,
    76 N.Y.2d 533 (1990) ........................................................................................................19

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure
    Rule 9(b) ........................................................................................................ passim
    Rule 12(b)(6) .................................................................................................. passim

Defendants the Archdiocese of New York and the Brooklyn Diocese[1] jointly move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because the facts alleged are not sufficient to sustain the claims asserted and for failure to plead fraud with specificity as required under Rule 9(b).

## PRELIMINARY STATEMENT

In this litigation, Plaintiffs Emmett W. Caldwell, Daniel Rice, Michael Leonard, and James Bruno (collectively "Plaintiffs" and each individually, "Plaintiff") assert on behalf of themselves, and a purported class of other similarly situated individuals, that they were fraudulently induced by the Archdiocese of New York and the Brooklyn Diocese (collectively "Defendants") to enter into settlements that significantly undervalued their individual abuse claims in light of the recent passage of New York's Child Victims Act ("CVA").  (*See Compl.* at ¶¶2, 3.)  Two and a half years after Defendants voluntarily initiated compensation funds for child victims whose statutes of limitation to initiate lawsuits had expired, and paid each Plaintiff a settlement award in exchange for a release, Plaintiffs seek to set aside those agreements on flawed theories of fraudulent inducement, negligent misrepresentation and unjust enrichment, because -- in their view -- filing a lawsuit now under the CVA presents a more lucrative option.

Plaintiffs' Complaint is deficient and subject to dismissal under Fed. R. Civ. P. 12(b)(6) and 9(b) because they have not – and cannot – identify a misstatement of a then-present fact that they reasonably relied upon, as required to establish claims of fraudulent inducement and

---

[1] This litigation was originally filed in New York State Supreme Court, New York County.  On February 7, 2020, Plaintiffs entered into a stipulation dismissing The Rockville Centre Diocese as a defendant. That same day, February 7, 2020, the matter was removed to this Court under the Class Action Fairness Act.  Although the Rockville Centre Diocese remains in the case caption, it is no longer a party to the litigation.

negligent misrepresentation, nor have they pleaded such claims with the specificity required for fraud claims.  Instead, Plaintiffs merely allege that in 2017, more than two years before the CVA was enacted, Defendants made representations to Plaintiffs concerning the adequacy of the proposed settlements, and the lack of other then-present remedies.  Plaintiffs claim that these representations were known misstatements that Plaintiffs reasonably relied upon.  Plaintiffs' allegations fail to state a claim because Defendants' alleged statements were either statements of opinion (not fact) or were true when made.  Furthermore, Plaintiffs have alleged no facts to support the contention that their reliance on any alleged misrepresentation was reasonable given the CVA's journey through the New York State legislature was a matter of public record and heavily reported in the media.  Plaintiffs also fail to allege any facts that could support the "special relationship" required to plead a negligent misrepresentation claim, given that the settlements were arms-length transactions in which Defendants owed no fiduciary duty to Plaintiffs.

In addition, the Complaint is devoid of any specificity or details regarding Defendants' alleged fraudulent statements, which are required under Fed. R. Civ. P. 9(b).  The Complaint fails to identify who made the alleged fraudulent statements, what exactly was said, where it was said and when the statements were made.  Under the federal pleading standard, Plaintiffs' Complaint cannot proceed.

Finally, because Plaintiffs cannot successfully plead a basis upon which to rescind the release agreements, their unjust enrichment claim must also be dismissed.  New York law does not allow a plaintiff to assert quasi-contractual claims where a valid contract exists.  The release agreements, from which Plaintiffs received settlement payments, govern the parties' relationship.

Because those contracts are valid, Plaintiffs' unjust enrichment claims should be dismissed in their entirety.  For these reasons, as set forth in detail below, the Complaint should be dismissed.

## FACTUAL ALLEGATIONS

*The IRCP*

On October 6, 2016, the Archdiocese of New York voluntarily implemented a program through which it sought to compensate individuals who were victims of sexual abuse by members of the clergy when they were minors. (*Compl*. at ¶¶2, 13, 14.)[2]  The program, referred to as the Independent Reconciliation and Compensation Program ("IRCP"), was administered by independent mediators Kenneth Feinberg and Camille Biros.  (*Id.* at ¶17.)  Feinberg and Biros were responsible for assessing claims brought to the IRCP and deciding the amount of compensation to be paid to participants.  (*Id.*)  Feinberg and Biros represented that there was "no limit or cap on the amount that could be awarded" and recommended settlement amounts that included "low to mid six figures."  (*Id.*)  The Brooklyn Diocese launched a similar program in June 2017.  (*Id.* at ¶15.)

Participation in the IRCP was completely voluntary. (Plevan Decl. Ex. 1, Caldwell General Release, p. 15.)[3]  All participants were required to have counsel.  (Plevan Decl. Ex. 1 at 14-15.)  Participants who did not engage their own counsel were provided with pro bono counsel by the IRCP to advise and assist them in understanding "[the] language and meaning" of the

---

[2] All citations to the Complaint refer to Docket Entry No. 1, Attachment 1, and are referenced herein as "*Compl.*"  In accordance with Rule 12(b)(6), Defendants assume the allegations as pleaded in the Complaint to be true for purposes of this motion only.

[3] All documents referenced herein are attached to the Declaration of Bettina B. Plevan ("Plevan Decl."). *See Hofelich v. Ercole*, No. 07 Civ. 8059 (PKC) (DFE), 2008 WL 2796636, at *2 (S.D.N.Y. July 17, 2008) ("The Court [may consider] documents which are attached to the complaint, and any documents which are incorporated by reference into the complaint," on a motion to dismiss.).

"release" provision contained in the agreement.  (*Compl*. at ¶20; Ex. 1 at 16.)  By signing the General Releases, participants discharged Defendants from all liability associated with their claim, and "acknowledged" the "adequacy and sufficiency" of the award amounts.  (Plevan Decl. Ex. 1 at 14.)

*The Child Victim's Act*

When the IRCP was conceived and instituted, the CVA was already under consideration in the New York state legislature.  (*Compl*. at ¶14.)  If passed, the CVA would "create a certain time period or 'window' to allow victim-survivors to file their claims in court while defendants are denied a statute of limitations defense."  (*Id*.)  As evidenced by the public record surrounding the CVA, including its legislative history and the extensive media coverage of the bill's prolonged consideration in the legislature, the bill's passage was uncertain for ten years.[4]  (See (Plevan Decl. Exs. 2, 3.)  Although the bill passed the Assembly in 2007 and 2008, and was referred to the Senate Code Committee every year from 2010 to 2018, the legislature took no further action until January 28, 2019 when the CVA was finally passed in the New York State Assembly.  (*See* Plevan Decl. Ex. 2 at 1, 15, 16, 17, 24, 25, 31, 44, 45, 46, 52, 62, 63, 64, 65, 66, 68, 76, 87, 88, 89, 90; Plevan Decl. Ex. 3.)  Shortly thereafter, the bill passed the New York State Senate and on February 14, 2019, Governor Cuomo signed the CVA into law.  (*Id*.)  For ten years, the CVA remained part of New York's legislative agenda but was never passed.  The entirety of its ten year journey has been a matter of public record. (*See* Plevan Decl. Ex. 2.)

---

[4] *See Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018) (On a 12(b)(6) motion "[c]ourts may take judicial notice of public documents or matters of public record."); *Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F. Supp. 2d 272, 278 (S.D.N.Y. 2013) ("The Court may… take judicial notice of public documents such as legislative histories."). *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, No. 06 Civ 6278 (SHS), 2006 WL 3771013 (S.D.N.Y. Dec. 18, 2006) (On a 12(b)(6) motion the "Court can take notice of the *existence* of a publicly-available newspaper or magazine article.") (emphasis in original).

*Plaintiffs' Participation In IRCP*

Plaintiff Emmett Caldwell voluntarily entered the IRCP and signed a General Release on July 22, 2017, a year and a half before the CVA passed, in exchange for $75,000. (Plevan Decl. Ex. 1 at 14-16.) Plaintiffs Daniel Rice, Michael Leonard and James Bruno also entered the IRCP and signed General Release agreements. (*Compl*. at ¶22.) As explicitly stated in the General Release agreements, Plaintiffs were provided with counsel who advised as to the "language and meaning" of the release provision. (Plevan Decl. Ex. 1 at 15-16.)

## ARGUMENT

## I.      PLAINTIFFS FAILED TO ADEQUATELY PLEAD FRAUDULENT INDUCEMENT

To survive a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "This standard demands 'more than a sheer possibility that a defendant has acted unlawfully.' 'Plausibility depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable.'" *Burton v. Label, LLC*, 344 F. Supp. 3d 680, 692 (S.D.N.Y. 2018) (J. Broderick) (citations omitted).

Plaintiffs assert a claim for fraudulent inducement -- fashioned as a claim for declaratory judgment -- on the ground that they allegedly relied upon, to their detriment, misrepresentations purportedly made by Defendants concerning the IRCP. Plaintiffs' claim fails because they have not alleged a misrepresentation of fact, nor reasonable reliance.

Under New York law, a legally cognizable claim of fraudulent inducement based on a misrepresentation requires that a plaintiff allege: (1) a misrepresentation of a then-present fact;

(2) which was untrue; (3) the fact was material; (4) the fact was known to be untrue; (5) the fact

was offered to deceive another or to induce him to act; (6) the injured party did not know the

statement was false; (7) reasonable reliance of the other party on the misrepresentation; (8)

which that other party relied on; and (9) caused injury. *See Connaughton v. Chipotle Mexican

Grill, Inc.*, 135 A.D.3d 535, 537 (1st Dep't 2016).  Plaintiffs' failure to plead a misrepresentation

and reasonable reliance thereon defeats their claim.

### A.   Alleged Statements Were Irrefutably True Or Statements Of Opinion

Plaintiffs' fraudulent inducement claim is based upon the following alleged

misrepresentations: (i) the IRCP process was "[Plaintiffs]' only recourse;" (ii) the IRCP "would

result in fair and reasonable" settlement offers; (iii) "there was no reasonable prospect that

victim[]-survivors could ever receive more for their claims than the amounts determined under

the IRCP;" (iv) there was "no limit, cap or range" for the settlement amounts; (iv) and "there was

no reason for victim-survivors participating in the IRCP to retain a lawyer to provide advice

regarding the merits of the IRCP process or the fair value of the claims being released."

(*Compl.* ¶¶18, 40.)  When each Plaintiff entered into his IRCP General Release agreement, the

CVA had, in fact, not been passed, and any representation regarding fairness of the settlement

values or the necessity of counsel, were statements of opinion. For these reasons, Count One of

the Complaint should be dismissed.

"It is well-established that a plaintiff is generally required to show that an alleged

fraudulent statement is one of fact," not opinion.  *Union Carbide Corp. v. Montell N.V.*, 9 F.

Supp. 2d 405, 409 (S.D.N.Y. 1998) (citing *Sirohi v. Lee*, 222 A.D.2d 222, 634 N.Y.S.2d 119,

120 (1st Dep't 1995) ("[A] mere expression of opinion… is insufficient to support an action for

fraud."))  This rule has particular force when the opinion relates to something that was known to

be in dispute at the time the statement was made.  *Union Carbide Corp.,* 9 F. Supp. 2d at 409.

At the time Plaintiffs voluntarily participated in the IRCP, the value of their claims was unknown and necessarily in dispute.  Defendants engaged two well-respected and independent mediators to "assess" the claims of the IRCP participants and "decide the amount of compensation to be paid to victim-survivors."  (*Compl*. at ¶17.)  Any statement that was made by Defendants concerning the "fairness" or "reasonableness" of the amounts offered, or the "prospect" that Plaintiffs could receive greater amounts were unquestionably statements of opinion, which cannot form the basis for a fraudulent inducement claim.  *See IKB Int'l S.A. v. Bank of Am.*, No. 12 Civ. 4036(LAK), 2014 WL 1377801, at *9 (S.D.N.Y. Mar. 31, 2014) (statements concerning valuations were inherently subjective and matters of opinion and thus could not be the basis of a cause of action to void a contract for fraud).

Moreover, when Plaintiffs signed the IRCP General Release agreements, they "acknowledged" the "adequacy and sufficiency" of the award amounts.  (Plevan Decl. Ex. 1 at 14.)  Their disagreement with those statements now, over two years later, does not provide the basis for asserting a claim of misrepresentation.  *See, Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014) (under New York law "a party is under an obligation to read a document before he or she signs it, and a party cannot generally avoid the effect of a document on the ground that he or she did not read it or know its contents").  *See also In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 394-95 (S.D.N.Y. 2006) (holding Plaintiffs could not plead fraud when they could allege no basis for concluding statements were knowingly false when made and solely relied on after-the-fact rationalizations to show falsity).

Furthermore, Plaintiffs do not allege that Defendants' statements regarding Plaintiffs' options were, in fact, false.  Nor could they because when Plaintiffs released their claims against Defendants, the IRCP *was* Plaintiffs' only recourse.  Put another way, in 2017, the year Plaintiffs

7

entered into the General Release agreements, they were barred from raising their claims in court due to the expiration of the statute of limitations and the fact that the CVA had not yet been passed into law.  Even if Defendants did tell Plaintiffs in 2017 that the IRCP process was "their only recourse," those statements were true when they were made and therefore cannot form the basis for Plaintiffs' fraudulent inducement claim.  Under New York law, the alleged material misstatement must have been false *at the time it was made*.  *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 284, 290 (S.D.N.Y. 2014) (dismissing fraud claim because statements were not false at the time they were made).  Both this Court and the Second Circuit have held that without "contemporaneous falsity there can be no fraud."  *Id.* at 290.  *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (explaining that "fraud by hindsight" is not actionable).

Even though the CVA was not passed until nearly two years *after* Plaintiffs entered into their General Release agreements, Plaintiffs allege that because Defendants had "monitored" the legislative history of the CVA and "lobbied against its passage" they somehow knew that the law would eventually pass and open the door for Plaintiffs to later sue.  (*See Compl.* at ¶ 16.; Plevan Decl. Ex. 2 at 1-2, 46-48, 54, 66-68, 70, 78; Plevan Decl. Ex. 3.)  Plaintiffs' allegations are nonsensical and they make no effort to show how Defendants' position *against* the CVA somehow bestowed upon them the ability to anticipate the Act's passage *two years* later. Plaintiffs' allegations are based upon rank speculation and belied by both the legislative history of the CVA and the media reports chronicling the CVA's uncertain path through the New York State legislature.  (Plevan Decl. Ex. 2 at 1-3, 17-19, 26-27, 33, 46-48, 54, 64-68, 70, 78, 89-92; Plevan Decl. Ex. 3.)  Plaintiffs' inability to allege a contemporaneous misrepresentation of fact is fatal to their claim.

**B.**   **Plaintiffs Cannot Establish Reasonable Reliance Given CVA's Public Legislative History And Extensive Media Coverage**

Count One is also subject to dismissal because Plaintiffs have not alleged reasonable reliance.  "A plaintiff cannot establish justifiable reliance when by the exercise of ordinary intelligence it could have learned of the information it asserts was withheld."  *Burton*, 344 F. Supp. 3d at 698.  *See Connaughton*, 135 A.D.3d at 537.  It is black letter law in New York that reliance will be deemed reasonable only if the subject matter is peculiarly within one party's knowledge and is <u>not</u> in the public record.  *See Gen. Motors Corp. v. Villa Marin Chevrolet, Inc.*, No. 98 Civ. 5206 (JG), 2000 WL 271965, at *29-30 (E.D.N.Y. Mar. 7, 2000) (citing *Jordache Enters., Inc. v. Gettinger Assocs.*, 575 N.Y.S.2d 58 (1st Dep't 1991)).

Plaintiffs allege that due to Defendants' lobbying efforts *against* the CVA, it was reasonable for Plaintiffs to rely upon representations allegedly made by Defendants regarding the likelihood that the CVA "would not be passed into law."  (*Compl.* ¶14.)  The legislative history of the CVA was a public record equally available to all, including Plaintiffs.  Moreover, during the course of the bill's legislative history, copious news articles were written about it, including five New York Times' articles and one Village Voice article.  (*See* Plevan Decl. Ex. 3.)  Because the legislative history of the CVA was publicly available and, with the exercise of ordinary due diligence, Plaintiffs could have kept abreast of the CVA's legislative progression, Plaintiffs cannot allege reasonable reliance on any claimed representations made by Defendants.  *See Villa Martin Chevrolet, Inc. v. Gen. Motors Corp.*, No. 98 Civ. 6167 (JG), 1999 WL 1052494, at *6 (E.D.N.Y. Nov. 18, 1999) (holding reliance on representations concerning a certificate of occupancy, which was a public record, were unreasonable); *Foxley v. Sotheby's, Inc.*, 893 F. Supp. 1224, 1229 (S.D.N.Y. 1995) (holding plaintiff did not reasonably rely on alleged misrepresentations concerning the authenticity of a painting when a letter about the painting was

9

in the public domain and could have been requested by plaintiff); *see also Jordache Enters., Inc. v. Gettinger Assocs.*, 575 N.Y.S.2d 58 (1st Dep't 1991) (court denied the plaintiff's attempt to rescind lease agreement on the grounds the defendant fraudulently represented that one floor of the premises had a certificate of occupancy because such certificate was a matter of public record and not within the exclusive knowledge of the defendant, and thus, reliance was unreasonable).

Plaintiffs' claim for declaratory judgment, based on alleged fraudulent inducement, should be dismissed because they have not alleged that Defendants made a contemporaneous misrepresentation of fact, and cannot plead reasonable reliance.  For these reasons, Count One should be dismissed.

## II.     PLAINTIFFS CANNOT MEET THE PLEADING REQUIREMENT FOR THEIR NEGLIGENT MISREPRESENTATION CLAIM

To state a cause of action for negligent misrepresentation under New York law, a plaintiff must allege: (1) the existence of a special or "privity-like" relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information the defendant provided was incorrect; and (3) the plaintiff's reasonable reliance on it.  *Burton*, 344 F. Supp. 3d at 698.  Plaintiffs have not alleged sufficient facts that, if true, could satisfy any part of this three-part test.

### A.     Plaintiffs And Defendants Did Not Share A "Special Relationship"

Under New York law, whether a special relationship exists between two parties is determined by assessing three factors: (1) whether the person making the representation held or appeared to hold unique or special expertise; (2) whether a special relationship of trust or confidence existed between the parties; and (3) whether the speaker was aware of the use to which information would be put and supplied it for that purpose.  *Burton*, 344 F. Supp. 3d at 698 (dismissing negligent misrepresentation claim on 12(b)(6) motion for failure to allege facts

sufficient to support a special relationship); *see also Suez Equity Inv'rs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001).  To adequately plead a special relationship, Plaintiffs must allege that the relationship is one that involves "unique or specialized expertise" such that Defendants are in a position of "instilling confidence or trust." *Burton*, 344 F. Supp. 3d at 698.  The expertise prong applies to situations where one party specifically seeks out and requests a certain expertise or skill-set the other party represents it has.  *See MEI Int'l, Inc. v. Schenkers Int'l Forwarders, Inc.*, 807 F. Supp. 979, 985-86 (S.D.N.Y. 1992) (holding a special relationship whereby plaintiff requested defendants' advice and expertise concerning customs laws, and defendants had held themselves out as an expert in that field).  A "special relationship" cannot be based on an ordinary arm's length transaction.  *Burton*, 344 F. Supp. 3d at 698 (citing *Naughright v. Weiss*, 826 F. Supp. 2d 676, 688 (S.D.N.Y. 2011)).

Plaintiffs allege that "[i]n morals and good conscience" they "had a right to rely upon the Defendants for information."  (*Compl.* at ¶46.)  Plaintiffs do not identify the "specialized expertise" that Defendants allegedly possessed and the Complaint alleges no facts to suggest that Defendants held themselves out to Plaintiffs as experts on the CVA or the likelihood of its passage into law.  Similarly, the Complaint does not identify how Defendants were in a position of instilling confidence or trust given that Plaintiffs had made allegations against Defendants of abuse and other misconduct.  *See LGB Inc. v. Gitano Grp., Inc.*, 769 F. Supp. 1243, 1253 (S.D.N.Y. 1991) (holding no special relationship amongst parties to settlement agreement which resulted from alleged bad faith and harassing conduct).

Plaintiffs also have failed to plead that any special relationship existed before the transaction at issue occurred, as required under New York law.  *Burton*, 344 F. Supp. 3d at 698 (citing *Gregor v. Rossi*, 120 A.D.3d 447, 992 N.Y.S.2d 17, 19 (1st Dep't 2014) ("[T]he requisite

[special] relationship between the parties must have existed before the transaction from which the alleged wrong emanated, and not as a result of it.")).  Plaintiffs have alleged no facts to show that the parties shared a relationship before they entered the IRCP, and their status as congregants in the Roman Catholic Church is insufficient.  "Where … a parishioner plaintiff seeks to establish the existence of a fiduciary relationship with an institutional church defendant," such as the Archdiocese of New York or the Brooklyn Diocese, "the plaintiff may not merely rely on the church's status in general, but must come forward with facts demonstrating that his or her relationship with the institution was somehow unique or distinct from the institution's relationship with other parishioners generally."  *Bouchard v. New York Archdiocese*, No. 04 Civ. 9978 (CSH), 2006 WL 1375232, at *6 (S.D.N.Y. May 18, 2006).  In fact, Plaintiffs have not even alleged they were active members of the Church at the time they entered the IRCP, let alone the existence of a unique relationship.  Defendants' motion to dismiss the negligent misrepresentation claim should be granted.

### B. Defendants' Alleged Omissions Are Insufficient To Establish Negligent Misrepresentation Because Defendants Did Not Owe Plaintiffs A Fiduciary Duty

For the reasons stated above (*see supra* I.A, I.B), Plaintiffs' negligent misrepresentation claim should be dismissed because Plaintiffs cannot establish a then-present misstatement of fact made by Defendants, or that Plaintiffs' reliance upon Defendants' alleged misstatement was reasonable.  Plaintiffs' allegations detailing Defendants' alleged "omissions" fare no better.

Plaintiffs allege that Defendants "fail[ed] to advise Plaintiffs" about "the 'window' in the proposed Child Victim's Act legislation and how it affected their claims" and "of the reasonable value of their claims," including that "the IRCP would provide only a fraction of that value." (*Compl.* ¶48.)  Under New York law, an omission can only give rise to a claim of negligent misrepresentation where the parties enjoy a fiduciary relationship, or where one party possesses

superior knowledge *unavailable to the other party,* and knows the other is acting on the basis of mistaken knowledge. *See Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 122-23 (2d Cir. 1984) (affirming a release is valid, and not the result of fraud, because "all of the information [claimed to be concealed] was either a matter of public record, was not pursued by plaintiffs, or disclosed [by defendant], at least in part"). Plaintiffs have not – and cannot – allege a fiduciary relationship between Defendants and Plaintiffs. Rather, and as pled by Plaintiffs, their "relationship" during the IRCP was borne out of Plaintiffs' claims that members of Defendants' clergy sexually assaulted them as children and, therefore, was adversarial by nature.

Plaintiffs similarly have not alleged that Defendants were privy to any non-public information concerning the CVA that would have been relevant to their IRCP decision-making process. Rather, the only allegations that Plaintiffs put forth concern Defendants' lobbying efforts and interest in following the history of the legislation, activities any interested party could have done and neither of which bestowed upon Defendants any superior knowledge. (*Compl.* ¶16.) *See Foxley*, 893 F. Supp. at 1229 ("[A]ccess bars claims of justifiable reliance … where facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing … he must make use of those means, or he will not be heard to complain he was induced to enter … by misrepresentation.").

Plaintiffs' negligent misrepresentation claim fails as a matter of law and must be dismissed because Plaintiffs fail to allege any facts to support a special relationship, or to support reasonable reliance.

III.   **PLAINTIFFS FAIL TO SATISFY HEIGHTENED FRAUD PLEADING STANDARD**

A.   **Plaintiffs Fail To Plead Fraud With Particularity**

The Court should also dismiss the Complaint on the additional ground that Plaintiffs fail to plead their claims for fraud and negligent misrepresentation with particularity as required by Rule 9(b).  Federal Rule of Civil Procedure 9(b) is clear: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Here, Plaintiffs' "declaratory judgment" and "negligent misrepresentation" claims are both premised on the same allegations of purportedly fraudulent conduct, and, therefore, both must satisfy the particularity requirements of Rule 9(b).  *See Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, __ F. Supp. 3d __, No. 18 Civ. 8152 (JFK), 2019 WL 5595042, at *12 (S.D.N.Y. Oct. 30, 2019) (collecting cases holding that negligent misrepresentation claims premised on allegations of fraud must satisfy Fed. R. Civ. P. 9(b)); *Miller v. Int'l Paper Co.*, No. 12 Civ. 7071 (LAK) (JLC), 2013 WL 3833038, at *13 (S.D.N.Y. July 24, 2013) (dismissing negligent misrepresentation claim, finding it subject to Fed. R. Civ. P. 9(b)); *Dexia SA/NV v. Deutsche Bank AG*, Nos. 11 Civ. 5672 (JSR), 11 Civ. 6141 (JSR), 2013 WL 98063, at *4 (S.D.N.Y. Jan. 4, 2013) (collecting cases; "district courts in this District have routinely concluded that [Rule 9(b)] is applicable to negligent misrepresentation claims that are premised on fraudulent conduct").

"In order to satisfy Rule 9(b), a plaintiff must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Steamfitters Local 449 Pension Plan v. Skechers U.S.A., Inc.*, 412 F. Supp. 3d 353, 361 (S.D.N.Y. 2019).  In addition, it is impermissible to allege a fraud claim "upon information and belief" unless the "facts were

peculiarly within the possession and control of the opposing party." *Riker, Danzig, Scherer, Hyland & Perretti, LLP v. Premier Capital, LLC*, No. 15 Civ. 8293, 2016 WL 5334980, at *6 (S.D.N.Y. Sept. 21, 2016).  Even when the facts are within the possession and control of the opposing party, "the plaintiff still bears the burden of alleging facts upon which her or his belief is founded." *Id.* (internal citations and quotations omitted).

The Complaint here fails to satisfy these requirements.  It does not identify a single, specific statement that Plaintiffs contend is fraudulent.  *See Deutsch v. JPMorgan Chase & Co.*, No. 18 Civ. 11655 (VSB), 2019 WL 4805689, at *11 (S.D.N.Y. Sept. 30, 2019) (Judge Broderick) (dismissing Plaintiff's fraud claim because the Complaint fails to "articulate specific facts from which an inference of fraudulent intent . . . can be drawn."); s*ee also American Medical Distributors v. Macdonald Tuskey*, No. 16 Civ. 6016 (VSB), 2018 WL 1478301, at *7 (S.D.N.Y. Mar., 23 2018) (Judge Broderick).  None of the allegations in the Complaint quote, or even attempt to describe, the specific misrepresentations that Plaintiffs claim were made to each of them or to any absent class member.  Nor do Plaintiffs allege when they (or any putative class member) heard or read the alleged statements, by whom the offending statements were allegedly made, or why the statements are fraudulent.  *See, e.g., Skechers U.S.A.,* 412 F. Supp. 3d at 361; *Moore v. Thomson Reuters (GRC) Inc.*, No. 17 Civ. 0211 (LGS), 2017 WL 4083582, at *5 (S.D.N.Y. Sept. 13, 2017) (finding fraud claims "insufficient because they fail to identify any speaker, attributing the statement only to 'Defendant' or 'Defendant's representatives'").  These failures are fatal to Plaintiffs' Complaint.  *See EMA Fin., LLC v. Joey New York, Inc.*, No. 17 Civ. 9706 (VSB), 2019 WL 4600863, at *8 (S.D.N.Y. Sept. 22, 2019) (Judge Broderick) ("[The claim] for fraudulent inducement lacks the detail required by Rule 9(b) and must be dismissed."); *Green v. Covidien LP*, No. 18 Civ. 2939 (PGG), 2019 WL 4142480, at *8 (S.D.N.Y. Aug. 30,

2019) ("Plaintiff does not quote or describe the alleged misrepresentations. . . .  Accordingly, Plaintiff has not adequately identified the false statements and omissions . . . .").  Counts I and II of the Complaint, therefore, should be dismissed on this additional ground.

Instead of setting forth specific, allegedly fraudulent statements as required by Rule 9(b), Plaintiffs improperly attempt to rely on conclusory allegations that Defendants somehow misled unknown IRCP participants.  Many of these conclusory allegations are based "upon information and belief," but the Complaint makes no effort to plead the basis of any of Plaintiffs' "information and beliefs" or where such purported "beliefs" come from.  Because the Complaint is devoid of any facts whatsoever upon which Plaintiffs' beliefs are founded, such allegations are insufficient to survive scrutiny under Rule 9(b).  *See Riker, Danzig, Scherer, Hyland & Perretti, LLP*, 2016 WL 5334980, at *6.  These conclusory allegations also fail to specify the required who, what, when, where and how – each of which is required under Rule 9(b).  *See EMA Fin*., 2019 WL 4600863, at *7.

For example, Plaintiffs allege that, *"[u]pon information and belief,"* Defendants "misled victims to believe that they would not be able to recover more than the amounts offered . . . on their claims."  (*Compl*. ¶¶14 and 15 (emphasis added).)  That such allegations are made "on information and belief" implicitly concedes that Plaintiffs themselves were not misled.  Plaintiffs, in any event, fail to identify a specific statement that was made to IRCP participant, much less to them.  Plaintiffs also fail to explain how a prediction about the likelihood of future recovery, at a time when their claims were undisputedly barred by applicable statutes of limitation, could possibly be false at the time made.  Plaintiffs further fail to identify who made the alleged statements and when and where they were made.

16

Plaintiffs' allegations in Paragraphs 17 are similarly deficient.  There, Plaintiffs allege "***[u]pon information and belief***, it was represented to victims that there would be no limit or cap on the amount that mediators would award to the victims on their claims" and that "***[u]pon information and belief***," such representations were false.  (*Compl.* ¶17 (emphasis added).) Again, and fatal to Plaintiffs' pleading, by making this allegation "upon information and belief," they concede by implication that none of them heard, read or relied on such statements.  And Plaintiffs do not, and cannot, plead any facts about who made the alleged representations, where and when they were made, or how such representations were false (*i.e.,* evidence that tends to prove the existence of limits or caps).  Paragraph 17 also alleges that "[w]hile each DEFENDANT labelled the [IRCP] as independent, it was ***upon information and belief***, controlled and tightly orchestrated by" the Defendants.  (*Id.* ¶17 (emphasis added).)  But the Complaint fails to identify any specific statements made by any specific person that can support this conclusory allegation.  The only fact that Plaintiffs allege in support of the "controlled and tightly orchestrated" allegation is that Defendants "hired the same mediators, Kenneth Feinberg and Camille Biros, to assess the claims in the IRCP and decide the amount of compensation to be paid to victim-survivors."  (*Id.*)  That Defendants both hired the same highly regarded and experienced independent mediators does not establish fraud, control or orchestration – but rather points to an independent process.

Plaintiffs' conclusory allegations, in Paragraph 14, of statements "made to the public" by Cardinal Dolan and "other [unidentified] agents of the Archdiocese of New York" that the CVA "was seriously flawed, opposed by the Archdiocese of New York . . . and would not be passed into law" are also insufficient under Rule 9(b), and cannot otherwise support a fraud or misrepresentation claim.  Fatal to Plaintiffs' individuals claims, they again fail to allege that even

one of Plaintiffs heard, read or relied upon any of these "public" statements.[5]  Plaintiffs also fail

to identify which public statements they claim were false, and fail to identify "the other agents"

who supposedly made them.  These omissions are also fatal.  In any event, and even if Plaintiffs

had alleged they heard or relied on the alleged public statements (which they did not), such

statements, on their face, cannot possibly serve as the basis for a fraud claim because they were

either opinion, predictions or true at the time.  *See supra* I.A. at 6-8; *see also Moore*, 2017 WL

4083582, at *5 ("[O]pinions or predictions . . . cannot state a claim for fraud . . . .")  As Plaintiffs

allege, that the Archdiocese, prior to the passing of the CVA, held the opinion that the then-

proposed law was flawed and opposed it on that basis is not false or misleading.  Any statements

concerning the likelihood of the CVA's passage into law were similarly an opinion or

prediction.[6]  *See id.*  These statements were not, and cannot, support a fraud claim.

Finally, Plaintiffs claim that they were "advised by officials or agents of the Defendants

that they did not need lawyers in the IRCP process[.]"  (*Id.* ¶21.)  Plaintiffs allege only that a

lawyer might have been able to advise them of the reasonable value of their claims.  (*Id.*)  They

do not and cannot explain how this renders such a statement false. [7]

The Complaint fails to plead the fraud and negligent misrepresentation claims with the

particularity required by Rule 9(b) and must be dismissed.

---

[5] Referencing public statements by Cardinal Dolan about the CVA also eviscerates Plaintiffs' alleged lack of knowledge about the widespread reporting on the CVA.  It is completely implausible that Plaintiffs followed the legislative meanderings of the CVA sufficiently to know of and rely on Cardinal Dolan's statements but were completely unaware of the other reporting on it.

[6] This allegation also undercuts Plaintiffs' assertion that the Defendants falsely stated that the CVA was unlikely to pass.  If anything, the fact that these statements were allegedly made publicly indicates that the Defendants believed the CVA would not pass and precludes any inference of fraudulent intent.

[7] Nor do they allege what a competent attorney's advice regarding the claims at the time would have been given that each of Plaintiffs' claims were barred by applicable statutes of limitation.

B.     **Amending the Complaint Would Be Futile**

Finally, although a Court will usually grant a party who fails to plead fraud with specificity leave to amend, if the pleading would inevitably still fail to state a claim under Rule 12(b)(6), such a futile amendment need not be granted.  *See Hyo Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 249, 252-54 (S.D.N.Y. 2009) (denying plaintiffs leave to amend as futile, even though proposed amended complaint met specificity required by 9(b), because plaintiffs failed to state a claim for fraud under 12(b)(6).)  *See also Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) ), *overruled on other grounds*, 314 F.3d 541 (11th Cir. 2002) (holding a party need not be granted leave to amend if a pleading drafted in compliance with 9(b) would still fail to state a claim.)   As discussed above, (*see supra* I.A, I.B, II.A, II.B) Plaintiffs have not, and cannot, plead the requisite elements of fraudulent inducement and negligent misrepresentation claims.  As a result, the Complaint must be dismissed as a matter of law.

IV.    **UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED IN LIGHT OF PARTIES' CONTRACTUAL AGREEMENT**

Plaintiffs' claim for unjust enrichment should be dismissed because the parties' relationship was governed by a valid contractual agreement.  A claim of unjust enrichment "rests upon the equitable principle that a person shall not be allowed to enrich himself at the expense of another," and therefore, "is an obligation which the law creates, *in the absence of any agreement*, when because the acts of the parties or others have placed in the possession of one person money … under such circumstances that in equity and good conscience he ought not to retain it." *State v. Barclays Bank of New York, N.A.*, 76 N.Y.2d 533, 540 (1990) (citations omitted) (emphasis added).  "It is a general rule under New York law that no claim for unjust enrichment lies where

the subject matter of the claim is covered by a written contract." *Soft Classics S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249 (S.D.N.Y. 2006).

New York courts bar claims for unjust enrichment where a valid contract exists that covers the subject matter of the dispute. *NRW, Inc. v. Bindra*, No. 12 Civ. 8555 (RJS), 2015 WL 3763852, at *4 (S.D.N.Y. June 16, 2015) (dismissing plaintiff's unjust enrichment claim because on the face of the pleading plaintiff alleged existence of a writing which covered terms of the agreement subject to the dispute).  Thus, Plaintiffs' unjust enrichment claim can only possibly survive if the IRCP General Release agreements are invalid, which, as discussed at length above, they are not because neither Plaintiffs' fraud in the inducement nor negligent misrepresentation claims state a cause of action as a matter of law.  *See Robinson v. Pierce*, No. 11 Civ. 5516 (GBD) (AJP), 2012 WL 833221, at *5-7 (S.D.N.Y. Mar. 13, 2012) (enforcing release of tort claims when plaintiff could not allege the release was procured by fraud and could not assert with specificity any misrepresentations); *In re Worldcom, Inc.*, 296 B.R. 115, 124-125 (S.D.N.Y. 2003) (enforcing settlement agreement because plaintiffs failed to plead fraud with specificity under 9(b) and failed to allege any facts to support reasonable reliance); *see also In re Oil Spill by the Oil Rig Deepwater Horizon*, No. MDL 2179, 2017 WL 4764365, at *5-6, (E.D. La Oct. 20, 2017) (enforcing releases because they contained clear and non-misleading language alerting plaintiffs they had released their claims and such language barred any reliance on statements contrary to the explicit terms of the release).  Because the unambiguous General Release agreements at issue were not procured by fraudulent means (*see supra*), they cannot now be voided simply because a new, potentially more lucrative avenue for relief has opened.  Plaintiffs' quasi-contractual claims must be dismissed as a matter of law.  *See Gupta v. Headstrong, Inc.*, No. 17 Civ. 5286 (RA), 2019 WL 4256396, at *2 n.3 (S.D.N.Y. Sept. 9, 2019) (dismissing

plaintiff's claims, including his unjust enrichment claim, on the grounds that a valid settlement

governed and released the claims at issue); *Hallingby v. Hallingby*, 693 F. Supp. 2d 360, 369-70

(S.D.N.Y. 2010) (dismissing unjust enrichment claim because settlement agreement governed

the dispute at issue).

## **CONCLUSION**

For the reasons discussed above, the Court should grant Defendants' Motion to Dismiss

the Complaint without leave to replead and such other relief as the Court deems just and proper.

Dated:  March 30, 2020
        New York, New York                          Respectfully submitted,


**PROSKAUER ROSE LLP**                              **KELLEY DRYE & WARREN LLP**

By:  */s/ Bettina B. Plevan*            By:  */s/ John M. Callagy*
Bettina B. Plevan                                   John M. Callagy
Margaret A. Dale                                    Michael C. Lynch
Edna D. Guerrasio                                   Randall L. Morrison, Jr.
Eleven Times Square                                 101 Park Avenue
New York, New York  10036                           New York, New York  10178
Tel. No.:  (212) 969-3000                           Tel. No.:  (212) 808-7544
bplevan@proskauer.com                               jcallagy@kelleydrye.com
mdale@prosauer.com                                  mlynch@kelleydrye.com
eguerrasio@proskauer.com                            rmorrison@kelleydrye.com
*Attorneys for Defendant*                           *Attorneys for Defendant*
*the Archdiocese of New York*                       *the Brooklyn Diocese*