USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: ___5/19/2021___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                     :

EMMETT CALDWELL, DANIEL RICE,      :
MICHAEL LEONARD, JAMES BRUNO,    :
on behalf of themselves and others similarly   :
situated,                              :
                                     :

                     Plaintiffs,    :

                                     :

         - against -              :

                                     :

THE ARCHDIOCESE OF NEW YORK and  :
THE ROMAN CATHOLIC DIOCESE OF   :
BROOKLYN,                       :

                  Defendants.  :

--------------------------------------------------------X

20-CV-1090 (VSB)

**OPINION & ORDER**

Appearances:

Jeffrey Herman
Stuart Samuel Mermelstein
Herman Law Firm PA
Boca Raton, FL
*Counsel for Plaintiffs*

Edna Doris Guerrasio
Margaret Antinori Dale
Bettina Barasch Plevan
Proskauer Rose LLP
New York, NY
*Counsel for Defendant The Archdiocese of New York*

John Morgan Callagy
Michael Charles Lynch
Randall L. Morrison, Jr.
Kelley Drye & Warren, LLP
Bettina Barasch Plevan
Proskauer Rose LLP
New York, NY
*Counsel for Defendant The Roman Catholic Diocese of Brooklyn*

<u>VERNON S. BRODERICK, United States District Judge</u>:

Before me is the joint motion of The Archdiocese of New York ("Archdiocese of New York") and The Roman Catholic Diocese of Brooklyn ("Diocese of Brooklyn") (collectively, "Defendants") to dismiss the Amended Class Action Complaint of Plaintiffs Emmett W. Caldwell, Daniel Rice, Michael Leonard, and James Bruno (collectively, "Plaintiffs"). Also before me is Plaintiffs' request for the scheduling of a status conference in the instant action.

Because Plaintiffs fail to plead their fraudulent misrepresentation and negligent misrepresentation claims with particularity, Defendants' motion to dismiss is GRANTED. Plaintiffs' request for a status conference is DENIED. However, I grant Plaintiffs the opportunity to amend their complaint.

## I.       **<u>Background</u>**[1]

Plaintiffs are former participants in Defendants' Independent Reconciliation and Compensation Programs ("IRCPs" or "Programs") who released their claims of childhood sexual abuse against one of the Defendants through the Programs in the period between October 2016 and February 2019. Plaintiffs bring this action, on behalf of themselves and all others similarly situated, against Defendants for fraudulent misrepresentation (Count I) and negligent misrepresentation (Count II).

Plaintiffs allege that Defendants misrepresented material facts in procuring releases from Plaintiffs of their claims, by representing that: (1) the process would result in fair and reasonable offers of settlement for claims of clergy child sexual abuse; (2) the IRCP administrators ("IRCP

---

[1] The facts set forth herein are taken from the allegations contained in the Amended Class Action Complaint ("Amended Complaint"). (Doc. 19.) I assume Plaintiffs' allegations in the Amended Complaint to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, my reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

Administrators," "Program Administrators," or "Administrators") were "independent," when in fact they were hired and compensated by Defendants and subject to material limitations and directions dictated by Defendants; (3) the settlement offers made by the independent IRCP Administrators were fair and reasonable, when in fact they were materially affected by a monetary range and cap determined and imposed by Defendants; and (4) the IRCP Administrators would take into account the perpetrators' records of child sexual abuse reports or allegations in making settlement offers. (Doc. 19, Am. Compl. ¶ 56.)[2] Plaintiffs further allege negligent misrepresentation, in that Defendants owed a fiduciary duty to Plaintiffs, and breached such duty by: (1) failing to advise Plaintiffs of how the proposed New York Child Victims Act ("Act") might affect their claims; (2) failing to advise Plaintiffs of the improving prospects for enactment of the Act at the time of initiation of their IRCPs; (3) failing to inform Plaintiffs that they were lobbying to prevent legislation that would allow Plaintiffs to bring their claims in court, and instead leading Plaintiffs and the class to believe that there could be no recourse to the offers made in the IRCPs; (4) representing to victims-survivors that the IRCP process would result in fair and reasonable offers of settlement for claims of clergy child sexual abuse; (5) representing that the IRCP Administrators were independent although they were hired and compensated by Defendants and subject to material limitations and directions dictated by Defendants; (6) failing to advise Plaintiffs that the IRCP settlement offers were materially affected by a monetary range and cap determined and imposed by Defendants; and (7) misrepresenting that the IRCP Administrators would fairly take into account the perpetrator's history of child sexual abuse reports or allegations in making settlement offers. (*Id.* ¶ 65.)

Plaintiffs seek a declaration rescinding or voiding the releases signed by Plaintiffs and

[2] "Am. Compl." refers to Plaintiffs' Amended Class Action Complaint ("Amended Complaint"), filed April 20, 2020. (Doc. 19.)

other putative class members pursuant to CPLR 3001. (*Id.* ¶ 52.) Plaintiffs also seek damages for their underlying claims. (*Id.* Prayer for Relief.)

On or about October 6, 2016, Defendant Archdiocese of New York announced the launch of the IRCP. (*Id.* ¶ 12.) In June 2017, Defendant Diocese of Brooklyn instituted its IRCP modeled after the Archdiocese of New York's Program. (*Id.* ¶ 18.) Both Defendants' Programs were administered by attorneys Kenneth Feinberg and Camille Biros. (*Id.*) Archbishop Cardinal Timothy M. Dolan represented to the press that his aspiration for the IRCP was for it to become "a model to help victims heal." (*Id.* ¶¶ 17, 39.) Plaintiffs contacted the IRCP Administrators and agents without legal representation. (*Id.* ¶ 33.) Plaintiffs were at the time unaware of the prospects of the Child Victims Act being enacted. (*Id.*)

The IRCP operated by allowing victims-survivors to participate in the Programs, including Plaintiffs, where they were directed to provide information and documents to Program Administrators, including "details relating to the abuse, corroborating witnesses and records, and medical and psychological care records." (*Id.* ¶ 19.) Upon receiving and evaluating the requested information, the IRCP would provide a "Final Settlement Offer" to the victim-survivor. (*Id.* ¶ 20.) The form "Payment Determination Letter" used in the IRCPs represented to the victim-survivor: "Your Final Settlement Offer, determined by the Independent Administrators and shown below, is the amount you will be paid if you voluntarily decide to accept the offer and sign a General Release . . . ." (*Id.* ¶ 21.) Each form was signed by Mr. Feinberg and Ms. Biros, and represented in relevant part that

> WHEREAS, the Independent Administrators . . . have determined the Claimant is eligible to participate in the IRCP; and
> WHEREAS, after reviewing Claimant's submissions and after careful consideration of documentation and proof, and after due deliberation, the Administrators have issued a compensation determination to Claimant . . . .

(*Id.* ¶¶ 21, 32.)  When participants agreed to accept an offer, the IRCP Administrators would refer them to an attorney who expressly limited their representation of the victims to matters related to language and meaning of the Release.  (*Id.* ¶ 35; *see* Doc. 11, Plevan Decl., Ex. 1, at 16.)[3]  The "Payment Determination Letter" stated:  "you are required to consult with your attorney, or if you do not have an attorney the Administrators shall provide free pro bono legal counseling to you for the sole purpose of advising you concerning the language and binding nature of the Release."  (Am. Compl. ¶ 35.)  The General Release included a representation that the participant had received legal advice regarding the terms and conditions of the Release.  (*Id.* ¶ 37.)  Defendants would not accept a Release unless an attorney signed off on it.  (*Id.*)

The claims process, from submission of the claim to execution of the General Release and payment, generally took three to six months.  (*Id.* ¶ 31.)  Plaintiffs allege, upon information and belief, that the Archdiocese of New York procured at least 278 victim releases through the IRCP and paid approximately $60 million and the Diocese of Brooklyn procured approximately 500 victim releases through the IRCP and paid approximately $90 million.  (*Id.* ¶ 38.)

Around the time that the IRCP was instituted, the New York Child Victims Act was under consideration in the New York state legislature.  (*Id.* ¶ 14.)  The Act, among other things, lifts the statute of limitations and creates a window for victims-survivors with expired child sexual abuse claims to file their claims in court.  (*Id.*)  Defendant Archdiocese of New York lobbied against the passage of the Act.  (*Id.*)  For example, the New York Catholic Conference, headed by Archbishop Cardinal Dolan, spent $1.8 million over six years on lobbying the New York legislature and executive branch, including on efforts to stymie the Child Victims Act.  (*Id.* ¶ 15.)  In March 2018, during negotiations for the State's annual budget, Archbishop Cardinal

---

[3] "Plevan Decl." refers to Declaration of Bettina B. Plevan in Support of Defendants' Motion to Dismiss the Amended Complaint, filed March 30, 2020.  (Doc. 11.)

Dolan travelled to Albany to lobby against the Act, including attending a meeting with Governor Andrew Cuomo where they discussed the window legislation. (*Id*.) Archbishop Cardinal Dolan stated to the press at that time that the "look back [window] would be toxic for us." (*Id*.) On February 14, 2019, Governor Cuomo signed the Act into law. Alexander, McKinney Practice Commentaries, N.Y. C.P.L.R. § 214-g (2019). On August 3, 2020, the revival period was extended by one year, to August 14, 2021. Alexander, McKinney Supplementary Practice Commentaries, N.Y. C.P.L.R. § 214-g (2020). Plaintiffs state that Defendant Archdiocese of New York had superior information about the prospects of the Act's passage, given its lobbying apparatus. (Am. Compl. ¶ 15.) Plaintiffs allege that Defendants negligently failed to advise Plaintiffs of the prospect for enactment of the Act at the time of initiation of their respective claims processes, to advise Plaintiffs of how the Act might affect their claims, and to inform Plaintiffs that they were lobbying against the passage of the Act. (*Id.* ¶ 65.)

Plaintiffs also allege that Defendants made multiple false representations that the IRCP was "independent," which Plaintiffs construed to mean that the Program Administrators would make discretionary offers without influence or limitation by Defendants. (*Id*. ¶ 27; Doc. 26, Pls.' Opp. Mem. 10–11.)[4] Plaintiffs first point to the title of the program and description of the Program Administrators as "Independent." (Am. Compl. ¶ 22.) Each IRCP "Payment Determination Letter" also stated that the final settlement offer was "determined by the Independent Administrators." (*Id.* ¶ 21.) Further, the New York Times reported, upon initiation of Defendant Archdiocese of New York's IRCP, that "church officials" represented that "[the IRCP] will have the authority to determine who is eligible for compensation and how much is awarded." Sharon Otterman & Samantha Schmidt, *New York Archdiocese Offers Compensation*

---

[4] "Pls.' Opp. Mem." refers to Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss, filed June 15, 2020. (Doc. 26.)

*Program for Sexual Abuse Victims*, The New York Times (Oct. 6, 2016),

https://www.nytimes.com/2016/10/07/nyregion/new-york-archdiocese-compensation-sexual-

abuse-victims.html.  The representations concerning the "independence" of the Programs were

false, because Defendants, and not the Administrators, determined whether a claimant was

eligible to participate in the IRCPs and limited the amounts that any victim-survivor could be

paid under the Programs to a settlement range and cap.  (Am. Compl. ¶¶ 23, 25.)  The Program

Administrators had no authority to make offers to victims exceeding this settlement cap, which

Plaintiffs allege, upon information and belief, to be $500,000.  (*Id.* ¶ 25.)  The existence of the

settlement cap was not disclosed to victims.  (*Id.*)  Program Administrators were hired and

compensated by Defendants.  (*Id.*)  Moreover, the IRCP Administrators acted according to

Defendants' directions in determining the eligibility of IRCP claimants and caps on settlement

offers.  (*Id.* ¶ 30.)

Plaintiffs relied on the "independence" of the IRCP Administrators in accepting the

settlement offers and relinquishing their claims.  (*Id.* ¶ 36.)  They further state that the settlement

amounts they accepted fell far below the "real value" of their claims, which exceed $500,000 in a

typical case of child sexual abuse against a clergyman.  (*Id.* ¶¶ 26, 34.)  By secretly imposing a

cap on settlement amounts, Defendants effectively "discounted the amounts of all offers made in

the IRCP."  (*Id.* ¶ 28.)

## II.     Procedural History

On or about January 3, 2020, Plaintiffs commenced this action, entitled *Emmett W.*

*Caldwell, Daniel Rice, Michael Leonard, James Bruno, on behalf of themselves and others*

*similarly situated v. The Roman Catholic Archdiocese of New York, The Roman Catholic*

*Diocese of Brooklyn, The Roman Catholic Diocese of Rockville Centre*, Index No. 950003/2020

(the "State Action"), in the Supreme Court of the State of New York, County of New York.

(Doc. 1, at ¶ 1.)  On February 7, 2020, Defendants removed this action to the United States

District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1332, 1441.  (Doc.

1.)

On March 30, 2020, Defendants filed a joint motion to dismiss Plaintiffs' Complaint.

(Doc. 9.)  On April 1, 2020, I directed Plaintiffs to file an amended complaint by April 20, 2020

or any opposition to Defendants' motion to dismiss by April 30, 2020.  (Doc. 14.)  Plaintiffs filed

their Amended Complaint on April 20, 2020.  (Doc. 19.)

On May 18, 2020, Defendants filed the instant motion to dismiss the Amended

Complaint.  (Docs. 23, 24, Defs.' Mem.)[5]  On June 15, 2020, Plaintiffs filed their memorandum

of law in opposition to Defendants' motion to dismiss.  (Doc. 26, Pls.' Opp. Mem.)  On June 29,

2020, Defendants filed their reply.  (Doc. 27, Defs.' Reply.)[6]

On May 5, 2021, Plaintiffs filed a letter motion requesting the scheduling of a status

conference in this matter for the stated purpose of moving this case forward.  (Doc. 31.)

### III.    <u>Legal Standard</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility

---

[5] "Defs.' Mem." refers to Memorandum of Law in Support of Defendants' Motion to Dismiss, filed May 18, 2020. (Doc. 24.)
[6] "Defs.' Reply" refers to Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss, filed June 29, 2020.  (Doc. 27.)

that a defendant has acted unlawfully." *Id*. "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy*, LLC, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pled facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc*., 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id*.

In addition to the complaint, courts "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007). Courts may also consider matters subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007).

**IV.**  **Discussion**

Defendants move to dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the bases that the facts alleged in the Amended Complaint are insufficient to sustain the claims asserted, and that Plaintiffs fail to plead fraud with particularity as required under Rule 9(b). Because Plaintiffs have not pled their fraudulent misrepresentation claim with the particularity required by Rule 9(b), have not met two elements of their pleading burden with

respect to Defendants' alleged negligent withholding of information about the Child Victims Act, and have failed to plead the remainder of their negligent misrepresentation allegations with the specificity required by Rule 9(b), Defendants' motion is GRANTED.

## A. *Fraudulent Misrepresentation Claim*

Defendants argue that (1) Plaintiffs do not plead their claims for fraud with sufficient particularity since they do not identify the specific allegedly fraudulent statements that were made to them or who made them and Plaintiffs' allegations regarding a lack of independence are based purely on conjecture; (2) Plaintiffs do not plead Defendants' omissions regarding the possible enactment of the Child Victims Act with sufficient specificity; (3) Plaintiffs do not adequately plead that they justifiably relied on Defendants' statements; and (4) Defendants' statements concerning the "independence" of the IRCP or its Administrators, as well as the "fairness" or "reasonableness" of the amounts offered, were statements of opinion, which cannot form the basis for a fraudulent inducement claim.

### 1. Applicable Law

To survive a motion to dismiss under New York law, a plaintiff pleading fraudulent misrepresentation must allege facts showing that: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 186–87 (2d Cir. 2004) (citation omitted); *see also Rana v. Islam*, 305 F.R.D. 53, 58 (S.D.N.Y. 2015).

In addition, Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard for allegations of fraud. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).

In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. *Id.* To comply with Rule 9(b), a complaint alleging fraudulent misrepresentation under New York law "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (*quoting Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). "Rule 9(b) pleadings cannot be based upon information and belief." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972). The exception to this rule is that "fraud allegations may be so alleged as to facts peculiarly within the opposing party's knowledge, in which event the allegations must be accompanied by a statement of the facts upon which the belief is based." *DiVittorio*, 822 F.2d at 1247; *see Luce v. Edelstein*, 802 F.2d 49, 54 n.1 (2d Cir. 1986) (affirming dismissal of fraud claims "unsupported by any statement of facts upon which the belief is founded").

Furthermore, "a plaintiff is generally required to show that an alleged fraudulent statement is one of fact," not opinion. *Union Carbide Corp. v. Montell N.V.*, 9 F. Supp. 2d 405, 409 (S.D.N.Y. 1998) (citing *Sirohi v. Lee*, 634 N.Y.S.2d 119, 120 (1st Dep't 1995) ("[A] mere expression of opinion . . . is insufficient to support an action for fraud.")). However, optimistic statements "may be actionable upon a showing that the defendants did not genuinely or reasonably believe the positive opinions they touted . . . , or that the opinions imply certainty." *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 507 (S.D.N.Y.), *opinion corrected on denial of reconsideration*, 612 F. Supp. 2d 397 (S.D.N.Y. 2009) (quoting *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 239–40 (S.D.N.Y. 2006) (finding that statements asserting that "integrity and honesty were at the heart of [the] business," and the defendant's attempts to

distinguish itself as producing "truly independent investment research while it allegedly knew the contrary was true" were actionable)).

When a fraud claim "lacks the detail required by Rule 9(b)" it "must be dismissed." *EMA Fin., LLC v. Joey New York, Inc.*, No. 17-CV-9706 (VSB), 2019 WL 4600863, at *8 (S.D.N.Y. Sept. 22, 2019) (Broderick, J.). While "Rule 9(b) permits scienter to be averred generally," the plaintiff must "plead the factual basis which gives rise to a strong inference of fraudulent intent.'" *United States ex rel. Tessler v. City of New York*, 712 F. App'x 27, 29 (2d Cir. 2017) (internal quotation marks omitted); *Deutsch v. JPMorgan Chase & Co.*, No. 18-CV-11655 (VSB), 2019 WL 4805689, at *11 (S.D.N.Y. Sept. 30, 2019) (Broderick, J.) (dismissing the plaintiff's fraud claim because the complaint failed to "articulate specific facts from which an inference of fraudulent intent . . . can be drawn") (citation omitted).

### 2. Application

Plaintiffs put forth three primary affirmative misrepresentations of fact or omissions in their Amended Complaint. First, Plaintiffs allege that embedded in the very name of the Program is a representation as to the Program's independence. (Pls.' Opp. Mem. 10–11.) Second, each Plaintiff received a "Payment Determination Letter" representing that the offer amount conveyed to each Plaintiff was "determined by the Independent Administrators." (*Id*. at 11.) Plaintiffs then claim that because each letter was signed by Mr. Feinberg and Ms. Biros, who were agents of Defendants, the quoted statements are attributable to Defendants. (*Id*. at 13.) Third, Plaintiffs identify a statement in a 2016 New York Times article by unspecified "church officials" of Defendant Archdiocese of New York that "[the IRCP] will have the authority to determine who is eligible for compensation and how much is awarded." (Am. Compl. ¶ 22.) Plaintiffs argue that this statement is attributable to Defendant Archdiocese of New York. (Pls.'

Opp. Mem. 14.)  I will assess whether these allegations are sufficient to plead a claim of fraudulent misrepresentation with the particularity and specificity requirements of Rule 9(b).

Defendants aver that Plaintiffs do not specify the allegedly fraudulent statements, sufficiently identify the speaker of these statements, or state where and when the statements were made. *Lerner*, 459 F.3d at 290.  Defendants further argue that Plaintiffs' claims that Defendants misrepresented that the IRCP and its Administrators were "independent" and that the IRCP "process would result in fair and reasonable" settlement offers are based upon statements of opinion that cannot, as a matter of law, support their claim.  (Defs.' Mem. 14; Am. Compl. ¶¶ 27, 29, 56.)

As an initial matter, since Plaintiffs have not identified affirmative statements or omissions by Defendants indicating that the settlement amounts were "fair" or "reasonable" in their Amended Complaint or opposing papers, Plaintiffs have not sufficiently pled misrepresentation by Defendants as required by *Lerner*.  Plaintiffs do not identify any specific statements where Defendants implicitly or explicitly proclaimed the fairness or reasonableness of the IRCPs, let alone the putative speakers, places, and times of such statements.  Plaintiffs' claims of fraudulent misrepresentation based on any alleged representations by Defendants that "the process would result in fair and reasonable offers of settlement" or that "the settlement offers made by the independent IRCP Administrators were fair and reasonable" thus do not meet the specificity requirements of Rule 9(b).  (*See* Am. Compl. ¶ 56.)

The sole remaining issue to be analyzed is Plaintiffs' claim concerning Defendants' alleged misrepresentations of the IRCP's "independence."  (*Id*.)  Plaintiffs define "independent" as "free from outside control; not subject to another's authority," or "not connected with another; separate," Concise Oxford English Dictionary 722 (12th ed. 2011), or "[n]ot dependent; not

subject to control, restriction, modification, or limitation from a given outside source," Black's Law Dictionary (5th ed. 1979). (Pls.' Opp. 10.) In the context of the Programs, they argue that it "represents to victims-survivors participating in the IRCP that fair and impartial offers on their claims will be rendered by the IRCP Administrators alone, without limitation, control or restriction by Defendants." (*Id*. at 11.) Defendants, on the other hand, contend that the term "independent" is a "subjective opinion, akin to 'puffery'" and thus cannot form the basis for a fraudulent statement. (Defs.' Reply 3.)

Because, as discussed below, I find Plaintiffs' fraud claim deficient for lack of particularity and failure to demonstrate that the statements on which their claim is based are indeed false, I need not decide today whether Defendants' statements regarding the "independence" of the IRCPs are statements of fact, not opinion, so as to form an actionable basis for a fraud claim. I note only that, considered in context, public statements as to the "independence" of programs could be found to be statements of fact for purposes of pleading fraud. A reasonable participant in the IRCPs could be found to rely on Defendants' proclamations that "independent" administrators determined settlement eligibility and amounts in deciding to accept the claim amounts and release Defendants of claims. Indeed, the purported independence of the claims adjudication process from Defendants' influence is plausibly a material factor that would have drawn a potential claimant to participate in the IRCP process in the first place. *See, e.g.*, *In re Moody's*, 599 F. Supp. 2d at 500 (finding Moody's statements as to its independence from interested business entities an actionable basis for a fraud claim where "Moody's business model rests on its reputation for independence and integrity").

With that said, even assuming that Plaintiffs have identified with specificity the time, place, and speakers of Defendants' allegedly fraudulent statements regarding the independence

of the Programs—which they do not[7]—the Amended Complaint does not raise sufficient facts to

suggest that the statements were indeed false. *See Lerner*, 459 F.3d at 290; *see also Luce*, 802

F.2d at 54 n.1. Although the rule that Rule 9(b) pleadings cannot be based "on information and

belief" is "relaxed as to matters peculiarly within the adverse parties' knowledge, the allegations

must then be accompanied by a statement of the facts upon which the belief is founded." *Segal*,

467 F.2d at 608; *see, e.g.*, *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 420 F.

Supp. 3d 123, 143 (S.D.N.Y. 2019) (dismissing complaint under Rule 9(b) for failure to "set

forth any factual basis" for assertions of misrepresentation based "upon information and belief").

Plaintiffs claim that Defendants imposed a settlement cap of $500,000 on offers to victims, yet

provide no supporting facts for this claim other than other than proclaiming it to be true "upon

information and belief." (*Id.* ¶ 25.) Plaintiffs similarly provide no factual basis for their

statement that IRCP Administrators were hired and compensated by Defendants and constrained

by Defendants in adjudicating Plaintiffs' claims. (*Id.*) Although well-pled facts that Defendants

directed and limited the settlement amounts obtainable by IRCP participants might belie

Defendants' assertions of the Programs' independence, *see, e.g.*, *In re Moody's*, 599 F. Supp. 2d

at 508 (holding that the plaintiffs pled sufficient facts to state a claim that the defendant's

representations of independence and ratings integrity were fraudulent), here, Plaintiffs' bare

assertions that Defendants indeed interfered in the administration of these Programs, without any

accompanying factual allegations to support those assertions, do not rise to a plausible claim that

Defendants' representations of independence were indeed fraudulent. *See Iqbal*, 556 U.S. at 662.

As such, even if Plaintiffs had pled with specificity that Defendants made representations that the

---

[7] Although Plaintiffs have identified at least one statement in a 2016 New York Times article by unspecified "church officials" of Defendant Archdiocese of New York, the statement is not attributable to a specific person, time, or place.

Programs and their Administrators were independent, Plaintiffs' failure to plead facts that would explain "why the statements were fraudulent" is fatal to their fraud claims. *Lerner*, 459 F.3d at 290.

Count I is accordingly DISMISSED for failure to state a claim upon which relief can be granted.

### B. *Negligent Misrepresentation Claim*

With respect to Plaintiffs' negligent misrepresentation claim, Defendants argue that "Plaintiffs fail to allege any facts that could support the 'special relationship' required to assert a negligent misrepresentation claim, particularly given that the settlements were arms-length transactions in which Defendants owed no fiduciary duty to Plaintiffs." (Defs.' Mem. 2.) Defendants further argue that Plaintiffs "cannot show that their alleged 'reliance' upon Defendants' alleged misrepresentations regarding the CVA's likelihood of passage was reasonable in light of the legislation's extensive media coverage." (*Id.*)

### 1. Applicable Law

To state a cause of action for negligent misrepresentation under New York law, a plaintiff must allege: "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Riker v. Premier Capital, LLC*, 15-CV-8293, 2016 WL 5334980, at *4 (S.D.N.Y. Sept. 21, 2016) (quoting *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014)). Under New York law, whether a special relationship exists between two parties is an issue of fact governed by weighing three factors: "[1] whether the person making the representation held or appeared to hold unique or special expertise; [2] whether a special relationship of trust or confidence existed between the parties; and [3] whether

the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001) (quoting *Kimmell v. Schaefer*, 675 N.E.2d 715, 719 (N.Y. 1996)); *see also Burton v. Label, LLC*, 344 F. Supp. 3d 680, 698 (S.D.N.Y. 2018). Plaintiffs "must establish something beyond an ordinary arm's length transaction where 'defendants initiated contact with plaintiffs, induced them to forbear from performing their due diligence, and repeatedly vouched for the veracity of the allegedly deceptive information.'" *Naughright v. Weiss*, 826 F.Supp.2d 676, 688 (S.D.N.Y. 2011) (quoting *Eternity Glob.*, 375 F.3d at 188).

Moreover, "[c]laims of negligent misrepresentation must also be pled with particularity if based on the same set of facts as intentional fraud claims." *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 771 (S.D.N.Y. 2011) (internal quotation marks omitted); *see, e.g.*, *Pilkington*, 420 F. Supp. 3d at 142 (applying Rule 9(b) to the plaintiff's negligent misrepresentation claim that was "not sufficiently distinct from its intentional misrepresentation claim").

### 2. Application

Plaintiffs make seven primary allegations as part of their negligent misrepresentation claim. *See supra* Part I. Four of the seven—namely, that Defendants (1) represented to victims-survivors that the IRCP process would result in fair and reasonable offers; (2) represented that the IRCP Administrators were independent; (3) failed to advise Plaintiffs that the IRCP settlement offers were limited by a monetary range and cap determined and imposed by Defendants; and (4) misrepresented that the IRCP Administrators would fairly take into account the perpetrator's history of child sexual abuse reports or allegations in making settlement offers—substantially mirror Plaintiffs' fraudulent misrepresentation claim. In other words, all four allegations are predicated on the assertion that Defendants misrepresented that the IRCP

process was independent or would result in fair and reasonable offers—allegations that Plaintiffs raise as part of their fraud case. As such, these claims are subject to the specificity requirements of Rule 9(b). *See, e.g.*, *Pilkington*, 420 F. Supp. 3d at 142 (applying Rule 9(b)'s heightened pleading standard to the plaintiff's negligent misrepresentation claim where "the gravamen of the claim very closely sounds in fraud . . . because it relies on the same facts and is nearly identical to the Complaint's intentional misrepresentation claim"). As explained above, *supra* Part IV.A.2, Plaintiffs have failed to sustain their pleading burden with regard to their fraudulent misrepresentation claim. Therefore, the negligent misrepresentation claim based on the same allegations must also fail.

The remainder of Plaintiffs' allegations that form part of their negligent misrepresentation claim relate to Defendants' alleged omissions regarding the legislative prospects of the Child Victims Act. *See supra* Part I. Specifically, Plaintiffs allege that Defendants (1) failed to advise Plaintiffs of how the proposed Act might affect their claims; (2) failed to advise Plaintiffs of the improving prospects for enactment of the Act at the time of initiation of their IRCPs; and (3) failed to inform Plaintiffs that they were lobbying to prevent legislation that would allow them to bring their claims in court, "leading Plaintiffs and the class to believe that there could be no recourse to the offers made in the IRCPs." (Am. Comp. ¶ 65.)

To the extent that Plaintiffs' claim sounds in negligence, Plaintiffs must plead facts establishing that their relationship with Defendants exceeded the "general relationship between a church or religious body and a congregant." *Bouchard v. New York Archdiocese*, No. 04 Civ. 9978 (CSH), 2006 WL 1375232, at *6 (S.D.N.Y. May 18, 2006). To establish a special relationship, "the plaintiff may not merely rely on the church's status in general, but must come forward with facts demonstrating that his or her relationship with the institution was somehow

unique or distinct from the institution's relationship with other parishioners generally." *Doe v. Holy See (State of Vatican City)*, 793 N.Y.S.2d 565, 568 (3d Dep't 2005). In an apparent attempt to meet this standard, Plaintiffs plead the following:

> At all relevant times, DEFENDANTS undertook a special, fiduciary relationship with PLAINTIFFS and class members in inducing them to settle their claims in the IRCP. Archbishop Cardinal Dolan represented that his aspiration for the IRCP was for it to become "a model to help victims heal." In instituting their IRCPs, DEFENDANTS thus engaged in a special undertaking for the purpose of helping victims of child sexual abuse by their clergy to heal from their resulting injuries. DEFENDANTS undertook a relationship with victims-survivors participating in the IRCPs that was unlike and distinct from the relationship of DEFENDANTS to their parishioners. In embarking on this undertaking with IRCP participants, DEFENDANTS entered into a fiduciary relationship with PLAINTIFFS and class members.

(Am. Compl. ¶ 39.) Plaintiffs also allege that they stood in a relationship with Defendants that was "unique and distinct from that of other parishioners generally" in that "[t]hey were sexually assaulted and abused as children by Defendants' clergy employees resulting in lifelong injuries from trauma and continuing efforts to heal." (Pls.' Opp. Mem. 23; *see* Am. Compl. ¶¶ 3–6). They point to Defendants' characterization of the IRCP as a "model to help victims heal," (Pls.' Opp. Mem. 23; Am. Compl. ¶ 17), and a process of "reconciliation" with victims-survivors, "as reflected in the 'R' of IRCP," (Pls.' Opp. Mem. 23–24). As such, Plaintiffs submit, Defendants

> characterized the IRCP as something much more than a commercial means to resolve claims at arms['] length. Rather, in seeking to make amends for their betrayal of Plaintiffs when they were children, Defendants asked victims-survivors to trust them in creating a device in which it was unnecessary for them to retain an attorney to review the merits of the offer, that would not require Defendants to disclose any priest files, and would provide fair and reasonable offers determined by "independent" Administrators.

(*Id*. at 24.)

As an initial matter, Plaintiffs' sexual abuse as children by Defendants' clergy employees

does not, by itself, establish a special relationship. *See Bouchard*, 2006 WL 1375232, at *6–7 (holding that no fiduciary relationship existed where the plaintiff pled no facts other than her abuse at the hands of a priest); *Holy See*, 793 N.Y.S.2d at 568–69 (holding that no special relationship or fiduciary duty was owed to parishioners who were abused as children by the Church, even when the Church had actively concealed abuse by moving priests from one clergy to another). Therefore, Plaintiffs' special relationship claim must turn on the allegations related to the IRCP process. However, Plaintiffs do not plead facts establishing the existence of a special relationship at the time that Plaintiffs agreed to participate in the IRCP—here, the relevant locus of analysis for Plaintiffs' claims. To plead a special relationship for purposes of negligent misrepresentation, the "requisite relationship between the parties must have existed before the transaction from which the alleged wrong emanated, and not as a result of it." *Burton*, 344 F. Supp. 3d at 698 (quoting *Gregor v. Rossi*, 992 N.Y.S.2d 17, 19 (1st Dep't 2014)). To the extent that Plaintiffs allege that they detrimentally relied on Defendants' alleged misrepresentations in agreeing to enter into the IRCP settlement agreements with Defendants, Plaintiffs do not show in the first instance that a special relationship existed prior to these transactions.

Moreover, even if a special relationship existed between Plaintiffs and Defendants, a plaintiff "cannot establish justifiable reliance when 'by the exercise of ordinary intelligence' it could have learned of the information it asserts was withheld." *Id.* at 698–99 (quoting *M & T Bank Corp. v. LaSalle Bank Nat. Ass'n*, 852 F. Supp. 2d 324, 339 (W.D.N.Y. 2012)); *PPI Enters. U.S. v. Del Monte Foods Co*., No. 99 Civ. 3794 (BSJ), 2003 WL 22118977, at *20, *24–25 (S.D.N.Y. Sept. 11, 2003) (citations omitted) (dismissing fraud claim where plaintiff was on notice that it possessed only selected information, but proceeded to enter a contract which stated

that it was "fully able to evaluate merits of the transaction").

Here, Plaintiffs signed releases "in exchange for [] Compensation Offer[s]" while the fate of the Child Victims Act was still pending. Each acknowledged that they were "voluntarily and freely entering" into a release and "completely read and fully [understood]" the terms and conditions, "including that accepting the Compensation Offer and signing [the] release is a full and final compromise, adjustment and resolution of any and all claims" against Defendants. (Plevan Decl., Ex. 1, at 15.) An ordinary person in any of Plaintiffs' positions at the time they signed the releases would have been privy to the same information regarding the potential enactment of the Act. As Defendants point out, the legislative history of the CVA was a widely reported matter of public record. (*See* Plevan Decl., Ex. 2.) Defendants also point to a series of news articles written about the bill and the effects of its passage during the period from June 2009 to January 2019, including the New York Times article cited in the Amended Complaint. (*See* Plevan Decl., Ex. 3.) Plaintiffs argue, however, that "it is not the information that was publicly available regarding the Child Victims Act that would have been relevant to victims-survivors in the months or years prior to its enactment." (Pls.' Opp. Mem. 24. n.8.) Rather, Plaintiffs claim that in light of Defendants' lobbying expenditures, (Am. Compl. ¶ 15), it may "reasonably be inferred that, through these efforts, Defendants had substantially greater information and insight concerning the behind-the-scenes legislative process as it related to the Child Victims Act prior to its enactment than could an individual clergy sex abuse victim without such lobbying power," (Pls.' Opp. Mem. 24. n.8). Specifically, Plaintiffs claim that Defendants had information about growing popular support and "the improving prospects of passage of child victims' legislation" that "was not publicly known." (Am. Compl. ¶ 1.) Plaintiffs, however, do not specify or describe what exactly this information entailed or how it

would place Defendants in any superior position to Plaintiffs in determining the timing or prospect of the bill's enactment.

Nor do Plaintiffs allege that Defendants "induced them to forebear from performing their own due diligence." *Suez*, 250 F.3d at 103. In other words, Plaintiffs do not claim that Defendants prevented them from doing research or investigating the Act on their own. In fact, the Amended Complaint sets forth that the IRCP Payment Determination Letters instructed: "you are required to consult with your attorney, or if you do not have an attorney the Administrators shall provide free pro bono legal counseling to you for the sole purpose of advising you concerning the language and binding nature of the Release." (Am. Compl. ¶ 35.) It appears that the IRCP Administrators made no representations as to the "merits of the offer," (Pls.' Opp. Mem. 24), and in fact explicitly limited their legal advice and representations to the four corners and the binding effect of the Release, (*see* Am. Compl. ¶ 35). Plaintiffs were encouraged to seek legal counsel before entering into the agreements, undercutting their claim that they were justified in relying on Defendants' representations regarding the merits of releases procured through the Programs alone. *See, e.g.*, *PPI Enters.*, 2003 WL 22118977, at *25 (dismissing negligent misrepresentation claims because the plaintiff "was on notice that it was in possession of only selected information" and could not then "complain that it was harmed by information that [the defendant] did not turn over when it was the party that failed to pursue clear disclosures"). As the allegedly withheld information about the Child Victims Act was readily ascertainable by Plaintiffs' ordinary diligence, Plaintiffs have not shown justifiable reliance for purposes of their negligent misrepresentation claim.

In sum, Plaintiffs have failed to sustain two elements of their pleading burden with respect to Defendants' alleged negligent withholding of information about the Child Victims

Act, and failed to plead the remainder of their negligent misrepresentation allegations with the specificity required by Rule 9(b). Accordingly, Plaintiffs' Count II is DISMISSED.

### C. *Leave to Amend*

Plaintiffs nonetheless request the opportunity to amend to correct any pleading deficiencies "[i]n the event that the Court were to deem any element of Plaintiffs' claims insufficiently alleged." (Pls.' Opp. Mem. 25 n.9.) As "complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend," *Luce*, 802 F.2d at 56 (citing 2A J. Moore & J. Lucas, *Moore's Federal Practice*, ¶ 9.03 at 9–34 (2d ed. 1986)), Plaintiffs' motion to amend is GRANTED, in light of the above discussion of the Amended Complaint's deficiencies. Plaintiffs should provide, in any second amended complaint, additional facts that would cure the pleading deficiencies discussed in this Opinion & Order.

### V. <u>Conclusion</u>

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' Amended Complaint is GRANTED. Plaintiffs' motion for leave to amend is GRANTED. Plaintiffs are directed to file any amendments within 30 days of the filing of this Opinion & Order.

IT IS FURTHER ORDERED that Defendants' original motion to dismiss Plaintiffs' Complaint is rendered moot in light of Plaintiffs' filing of their Amended Complaint.

IT IS FURTHER ORDERED that Plaintiffs' letter request for the scheduling of a status conference is DENIED.

The Clerk of Court is respectfully directed to terminate the open motions at Documents 9, 23, and 31.

SO ORDERED.

Dated:  May 19, 2021
        New York, New York

Vernon S. Broderick
United States District Judge